UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                :

SHERRY GRANT,                             :

                           Plaintiff,   :

           -against-          :

                                  :

UNITED CEREBRAL PALSY OF NEW YORK  :
CITY, INC., *et al.*,                    :

                     Defendants.  :

                                  :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/07/2014

11 Civ. 00018 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

    Plaintiff Sherry Grant, who was employed as a Residence Program Specialist ("RP Specialist") with Defendant United Cerebral Palsy of New York City, Inc. ("UCP"), brings this action for employment discrimination on the basis of her sex against defendants UCP, Kevin Cameron, Everett Watts and Yurella Lopez.

    The Complaint alleges disparate treatment, hostile work environment and retaliation. Plaintiff asserts claims based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") against Defendant UCP. Plaintiff asserts claims based on the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law and New York Administrative Code §§ 8-101 *et seq.* (the "NYCHRL") against all Defendants.

    Plaintiff moves for partial summary judgment on the issue that UCP discriminated against her on the basis of her sex, in violation of NYSHRL and NYCHRL, through UCP's policy and/or practice of assigning Plaintiff and other female RP Specialists to provide intimate care for consumers of the opposite sex, while not assigning male RP Specialists to provide

intimate care for consumers of the opposite sex.  For the reasons discussed below, Plaintiff's motion is denied.

Defendants move for summary judgment dismissing Plaintiff's complaint in its entirety. For the reasons discussed below, Defendants' motion is granted.

I.      Facts

The following facts are drawn from the parties' submissions in connection with the instant motions and are construed in the light most favorable to the non-moving party.

### A.  The Parties

Plaintiff was employed by Defendant UCP as an RP Specialist from 2000 to 2011. Defendant UCP is a not-for-profit agency, which provides full time care for individuals with developmental disabilities.  These "consumers" live in apartments in UCP-managed residences located throughout New York City.  Each residence is staffed by RP Specialists, who provide direct care to the consumers.

Plaintiff worked at a UCP residence known as the "Landings," located in Brooklyn. Defendant Cameron supervised Plaintiff at the Landings where he was the Program Director from November 2006 to July 2008.  He was replaced by his friend Defendant Watts, who was the Program Director there from November 2008 to 2012.  Another of Plaintiff's supervisors was Defendant Lopez, who was the Residence Manager at the Landings from November 2007 to April 2011.

### B.  The Kelly-Braithwaite Incident

Marilyn Kelly-Braithwaite was another RP Specialist employed by UCP, whom Defendant Cameron promoted in 2007 from an on-call RP Specialist position to a 30-hour RP Specialist position.  Defendant Cameron did not interview anyone other than Kelly-Braithwaite for that position.  Plaintiff, who had expressed interest in the position, felt that she was more

qualified than Kelly-Braithwaite, as Kelly-Braithwaite had been employed with UCP for only a few months, while Plaintiff had been employed with UCP for seven years.  When Plaintiff confronted Defendant Cameron at a staff meeting about the situation, he removed Kelly-Braithwaite from and hired Plaintiff to the position.  Plaintiff alleges that Defendant Cameron and Kelly-Braithwaite were involved in a sexual relationship.

### C.  Informal Complaint

In June 2008, Plaintiff confronted Defendant Cameron at one or more meetings regarding his alleged disrespectful treatment of women, asking him why he spoke to females differently than he spoke to males ("Informal Complaint").

### D.  The Transfer

On July 15, 2009, UCP transferred Plaintiff from the UCP residence at which she was working to another UCP residence (the "Transfer").  Plaintiff was replaced at her original location by a female RP Specialist.  Defendants maintain that the Transfer affected only minimally, if at all, the terms and conditions of Plaintiff's employment, as she continued to work an identical schedule, received no reduction in salary or benefits, continued to work under the same management, and continued to perform essentially the same duties.  Plaintiff claims that, following the Transfer, her workload increased and she was subjected to excessive scrutiny.

Defendants maintain that the Transfer was necessary because one of the consumers, referred to as "VS," complained about Plaintiff and requested that she no longer provide care for VS.  Defendants maintain that they investigated VS's complaints, but that ultimately there was no way to substantiate the allegations, so no disciplinary action was taken against Plaintiff.  Plaintiff denies the allegations reportedly made by VS and maintains that none of the consumers for whom she cared ever voiced any problems to her about her job performance.

### E.  Disproportionately Heavy Workload and Excessive Scrutiny

Plaintiff claims that after the Transfer, she was subjected to a heavier workload and excessive scrutiny.  Plaintiff claims that Defendant Lopez and Defendant Watts assigned Plaintiff, more often than they did other RP Specialists, to care for consumers who had the greatest needs and who were the most medically fragile.  Also, there was a greater supervisory presence at the location where Plaintiff was transferred compared with her prior location.

### F.  First Formal Complaint

On August 28, 2009, Plaintiff filed a complaint with the New York State Human Rights Division ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") ("First Formal Complaint").  Specifically, the First Formal Complaint mentioned the Transfer and the fact that Plaintiff allegedly was treated unfairly in comparison to Kelly-Braithwaite.  UCP filed a response to the First Formal Complaint on October 21, 2009.

On January 1, 2010, Plaintiff's attorney sent a letter to the NYSDHR detailing Plaintiff's grievances.  On January 6, 2010, the NYSDHR responded by letter to Plaintiff's attorney, instructing her that since the letter of January 1, 2010 set forth allegations that were not included in the First Formal Complaint, Plaintiff would need to file a new complaint in order for those new allegations to be investigated, which Plaintiff later did, as discussed below.

### G.  Disciplinary Actions

UCP has a progressive discipline policy consisting of first, second and third written warnings, then termination or administrative leave.  Residential Directors ultimately were responsible for disciplinary actions.

#### 1. August 14, 2009

On August 14, 2009, Defendants Watts and Lopez issued a written warning to Plaintiff for allegedly refusing to administer medication to consumers when directed to do so by

Defendant Lopez.  Plaintiff claims that she was unable to administer the medication because she had not received the required instructions from the nurse.  Plaintiff grieved the warning through her union, and UCP agreed to rescind the warning.

### 2. December 18, 2009

On December 18, 2009, Plaintiff was issued another written warning for not preparing an "Alert" after a consumer allegedly had fallen during Plaintiff's shift and for allegedly using profanity towards Lopez.  Plaintiff claims that, because she did not see the consumer fall, she was not authorized to prepare the alert and to do so would have been a violation of UCP policy.  Plaintiff also denies that she used profanity.

### 3. February 18, 2010

On February 18, 2010, Plaintiff and a co-worker, Philomene Previl, were issued written warnings for engaging in an argument in the presence of consumers.  Plaintiff denies that she was arguing with Previl.  Both Plaintiff and Previl grieved the warnings through the union process, and Previl's warning was eventually reduced to a verbal warning, while Plaintiff's remained a written warning.

### 4. March 12, 2010

On March 12, 2010, Plaintiff was issued a final written warning for inappropriate and insubordinate behavior.  Specifically, Plaintiff allegedly was conversing in the bathroom with another staff member who was bathing a consumer, which violated the consumer's privacy, and Plaintiff allegedly did not leave the bathroom and return to her duties when told to do so.  Plaintiff claims that she was in the bathroom because she was vomiting.

### 5. April 21, 2010

On April 21, 2010, Defendant Watts documented in Plaintiff's personnel file that on January 7, 2010, Plaintiff was responsible for an audit deficiency because she had left the medication cart unlocked when dispensing medication.

### H.  Second Formal Complaint

On March 12, 2010, Plaintiff filed a second complaint with the NYSDHR and the EEOC ("Second Formal Complaint").  Specifically, the Second Formal Complaint mentioned the Transfer, the excessive scrutiny Plaintiff felt she was under at the new location, the August and December 2009 disciplinary actions and the alleged disparity in respect shown to women and men by Defendant Cameron.

### I.  Senior RP Specialist Position

In March 2010, Plaintiff wrote a letter to Defendant Watts applying for an available 40-hour Senior RP Specialist position at the Landings.  Plaintiff wrote a second letter to Watts regarding this position in September 2010.  Watts did not interview Plaintiff for the position and hired someone else to fill it.

### J.  Federal Lawsuit

Plaintiff filed her Complaint in this Court on January 3, 2011, and amended her complaint on December 5, 2012.  Plaintiff has been out of work on administrative leave since October 2011.  Plaintiff has not alleged discrimination or retaliation regarding her being placed on administrative leave.

## II.  Summary Judgment Standard

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim.  *See, e.g.*, *Celotex,* 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact.  *See, e.g.*, *id.* at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001).  The non-moving party cannot "rely merely on allegations or denials" of the factual assertions of the moving party.  Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001).  Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

The non-moving party must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. *See*, *e.g.*, *Celotex*, 477 U.S. at 324; *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Furthermore, to demonstrate a genuine dispute as to the material facts, the non-moving party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in his favor. *See*, *e.g.*, *Anderson*, 477 U.S. at 242, 248; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

## III. Discussion

### A. Title VII Claims

Exhaustion of administrative remedies through the EEOC is "an essential element of Title VII's statutory scheme . . . and one with which defendants are entitled to insist that plaintiffs comply." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (citation omitted) (internal quotation marks omitted). Therefore, alleging Title VII claims in an EEOC charge is a "precondition to bringing such claims in federal court," unless the claims are "reasonably related" to claims that were alleged before the EEOC. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted). Claims are considered "reasonably related" to claims that were alleged before the EEOC if they "would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination." *Amin v. Akzo Nobel Chems., Inc.,* 282 Fed. Appx. 958, 961 (2d Cir. 2008) (citing *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir.2002)).

Many of the allegations in Plaintiff's Amended Complaint were not raised before the EEOC and are not reasonably related to claims that were. Accordingly, these claims are not actionable under Title VII. These allegations include, but are not limited to, the following: (1) that UCP has a policy and/or practice of assigning female RP Specialists to provide intimate care for consumers of the opposite sex, while not assigning male RP Specialists to provide intimate

care for consumers of the opposite sex (which explains why Plaintiff does not ask for summary

judgment on this claim under Title VII); (2) that male employees "were permitted to change their

schedules and assignments relatively easily while female employees could not"; (3) that "female

employees who were love interests and male employees were able to leave work before their

shifts were finished without repercussions while female employees who were not love interests

were not able to do so"; and (4) that Plaintiff was passed over for a promotion to Senior RP

Specialist in 2010.

The allegations in Plaintiff's Amended Complaint that Plaintiff did raise before the

EEOC are limited to the following: (1) that UCP transferred Plaintiff from the UCP location

where she had worked for many years to another UCP location where she was subjected to

excessive scrutiny; (2) that Plaintiff was subjected to disciplinary actions on several occasions in

retaliation for her complaints of discrimination; (3) that Plaintiff's supervisor "spoke to men

differently and accorded them more respect"; and (4) that Plaintiff was treated unfairly in

comparison to another female co-worker named "Marilyn," whom Plaintiff claims was her

supervisor's "love interest."   Accordingly, these allegations are the subject of the Title VII

analysis.

## 1.  Title VII -- Sex Discrimination

Plaintiff claims that UCP discriminated against her and subjected her to a hostile work

environment on account of her being female, in violation of Title VII.  Plaintiff's claims for sex

discrimination under Title VII fail as a matter of law.

### a.  Disparate Treatment

Construing the Amended Complaint liberally, but considering only those allegations that

were brought before the EEOC, Plaintiff attempts to assert two theories to support her claim of

disparate treatment based on gender under Title VII: (1) that she was treated unfairly in

comparison to another female co-worker, whom Plaintiff alleges was her supervisor's "love interest" and (2) that UCP transferred Plaintiff from the UCP location where she had worked for many years to another UCP location where she was subjected to excessive scrutiny.

### i. Legal Standard

Courts analyze claims of disparate treatment in violation of Title VII under the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Demoret v. Zegarelli*, 451 F.3d 140,151 (2d Cir. 2006).

Under this framework, first, the plaintiff must establish a prima facie case of sex discrimination by demonstrating: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

An adverse employment action in the discrimination context is defined as a "materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). In order to be considered materially adverse, the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks omitted). Examples of materially adverse changes are "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits [and] significantly diminished material responsibilities . . ." *Id.* (internal quotation marks omitted).

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted).

Second, if the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the defendant to provide "a legitimate, non-discriminatory reason for the employment action." *Weinstock*, 224 F.3d. at 42.  If the defendant succeeds in offering a legitimate, non-discriminatory reason, then "the presumption of discrimination arising with the establishment of the prima facie case drops from the picture."  *Id.*

Third, the burden shifts back to the plaintiff to come forward with "sufficient evidence" that the non-discriminatory reason offered by the defendant is "a mere pretext for actual discrimination."  *Id.*

### ii.  Application of Law to Facts

#### 1)  Unfair Treatment Compared to Love Interest

Plaintiff claims that she was treated unfairly in comparison to another female co-worker, whom Plaintiff alleges was her supervisor's "love interest."  In her submission to the EEOC, Plaintiff is vague concerning the context of the unfair treatment.  In her opposition to Defendants' motion for summary judgment, Plaintiff claims that in 2007, her supervisor promoted this other woman, without interviewing anyone else, to a position for which Plaintiff was more qualified.

This claim fails because it is not actionable under Title VII.  The Second Circuit "has long since rejected 'paramour preference' claims, which depend on the proposition that 'the phrase 'discrimination on the basis of sex' encompasses disparate treatment premised not on one's gender, but rather on a romantic relationship between an employer and a person preferentially [treated].'"  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (alteration in original) (quoting *DeCintio v. Westchester Cnty. Med. Cent.*, 807 F.2d 304, 306 (2d Cir. 1986) (affirming the dismissal of a Title VII claim based on an employer's preferential hiring of the person with whom he was involved sexually).

### 2)  The Transfer

Plaintiff claims that UCP transferred her from the UCP location where she had worked for many years to another UCP location where she was subjected to excessive scrutiny and a heavier workload.  Plaintiff alleges in her Amended Complaint that the Transfer was in retaliation for complaining about sex discrimination, but she also includes information about the Transfer in her first complaint to the EEOC, so the Court will analyze the Transfer under both the sex discrimination and retaliation frameworks.

This claim fails because Plaintiff cannot establish a prima facie case of sex discrimination for two separate reasons.  First, the Transfer does not qualify as an adverse employment action.  When a transfer is alleged to be an adverse employment action, the "key inquiry . . .  is whether the transfer constitutes a negative employment action tantamount to a demotion."  *Johnson v. Eastchester Union Free Sch. Dist.*, 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002) (finding a lateral transfer does not qualify as an adverse employment action where the employee "suffered no diminution in compensation, employment benefits, seniority status or any other emolument of his employment") (internal quotation marks omitted).  An employee's "mere dissatisfaction with [a] transfer and his preference for his former position . . . are insufficient to constitute a materially adverse employment action."  *Id.*

In other words, a transfer qualifies as an adverse employment action only "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya*, 202 F.3d at 641 (affirming the district court's granting of summary judgment to the defendant where the plaintiff did not produce "evidence to show that the transfer was to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement").

Here, Plaintiff has not produced any evidence that the Transfer was tantamount to a demotion or that the Transfer changed her responsibilities in such a way as to set back her career. The type of work that Plaintiff performed at both locations was the same – providing direct care to consumers. After the Transfer, Plaintiff maintained the same title, salary, benefits, management and schedule.

Plaintiff argues that after the Transfer, she was subjected to excessive scrutiny and a heavier workload. The record supports that Plaintiff experienced a greater supervisory presence than at her prior location. However, "scrutiny from . . . supervisors that [plaintiff] deem[s] excessive . . . do[es] not constitute 'adverse employment action[].'" *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999); *accord Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) ("excessive scrutiny do[es] not constitute adverse employment action[]").

Likewise, "allegations that [a] defendant[] discriminatorily . . . increased [a plaintiff's] workload . . . fail to state materially adverse changes in the terms and conditions of her employment." *Henriquez v. Times Herald Record*, 165 F.3d 14, 14 (2d. Cir. 1998) (unpublished table opinion); *accord Young v. Rogers & Wells LLP*, No. 00 Civ. 8019, 2002 WL 31496205, at *6 (S.D.N.Y. Nov. 6, 2002) ("Giving an employee more work, which could even be perceived as giving an employee a chance to excel, is not an adverse employment action." (internal quotation marks omitted)).

Second, Plaintiff cannot demonstrate circumstances giving rise to an inference of discrimination. Plaintiff does not produce any evidence that would allow a reasonable jury to find that the Transfer occurred because of Plaintiff's sex.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for disparate treatment based on sex under Title VII is granted.

### b. Hostile Work Environment

Construing the Amended Complaint liberally, but considering only those allegations that were brought before the EEOC, Plaintiff's claim of hostile work environment on account of her gender under Title VII rests on the allegation that "[w]omen who were not love interests were spoken to by Defendant Cameron in a domineering and rude manner while women who were love interests and men were spoken to respectfully." Plaintiff has not produced evidence from which a reasonable jury could conclude that Defendant Cameron's behavior was sufficiently severe or pervasive, or that the conduct occurred because of her sex.

### i. Legal Standard

Claims of hostile work environment are not analyzed under the three-part burden-shifting framework described above. Instead,

> [i]n order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer.

*Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)). It is also "axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted).

Regarding the first prong, the plaintiff must show that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* at 373. "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (internal quotation marks omitted).

The Second Circuit has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* (internal quotation marks omitted). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* "[R]elevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A court "must also consider the extent to which the conduct occurred because of [the] plaintiff['s] sex." *Demoret*, 451 F.3d at 149-50.

Regarding the second prong, if the alleged harasser is a supervisor, and the "harassment culminates in a tangible employment action," then the employer is "strictly liable." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). A "tangible employment action" is one that effects a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2442 (internal quotation marks omitted).

However, if the alleged harasser is a supervisor, but "no tangible employment action is taken," then "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.* at 2439.

With respect to the first prong of this defense, an employer "need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care" and "the existence of an anti-harassment policy with complaint procedures is an important consideration." *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) (internal quotation marks omitted).

Regarding the second prong of the defense, the employer must show that the plaintiff "acted unreasonably in failing to avail herself of the company's internal complaint procedures," and then the burden shifts to the employee to "come forward with one or more reasons why the employee did not make use of the procedures." *Id.* at 246.

### ii.   Application of Law to Facts

In her Amended Complaint, Plaintiff alleges, "[w]omen who were not love interests were spoken to by Defendant Cameron in a domineering and rude manner while women who were love interests and men were spoken to respectfully."

This claim fails because Plaintiff has not produced any evidence that the conduct occurred "because of her sex," a requirement to establish a sex-based hostile work environment under Title VII.  By Plaintiff's admission, Defendant Cameron treated some women as well as he treated men, which establishes that his alleged disrespectful treatment of Plaintiff was not on the basis of her sex.  *See Kelly*, 716 F.3d at 13-14 (affirming dismissal of Title VII hostile work environment claim where the plaintiff alleged the defendant's "widespread sexual favoritism . . . created an atmosphere in the workplace that was demeaning to women" and the district court found that this was not discrimination based on the plaintiff's sex).

Nevertheless, even if Plaintiff's claim had been phrased in her Amended Complaint the way it was in her Second Formal Complaint to the EEOC – "He spoke to the men differently and accorded them more respect [than the women]" – then this claim still would fail, for two separate reasons.  First, the claim fails under the first prong of the standard: that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

Plaintiff does not provide sufficient evidence that she was subjected to an objectively hostile work environment on the basis of her sex.  As an initial matter, Plaintiff fails to adduce

16

evidence sufficient for a reasonable jury to conclude that Defendant Cameron treated men with more respect than women.  Plaintiff does not point to any specific examples or instances of hostility toward women and instead relies solely on vague and conclusory allegations.  Yet, "'purely conclusory allegations of discrimination, absent any concrete particulars' cannot preclude summary judgment."  *Robinson v. Metro-North Commuter R.R. Co.*, Nos. 94 Civ. 7374, 95 Civ. 8594, 1998 WL 17742, at *8 (S.D.N.Y. Jan. 16, 1998) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)) (dismissing hostile work environment claims where the plaintiffs "fail[ed] . . . to make any specific allegations or provide any particularized admissible evidence to support [the] general claim").  Without specific evidence, no reasonable jury could find that this alleged disparity in respect amounted to conduct extreme enough to cause a change in the terms and conditions of Plaintiff's employment.

Second, the claim fails under the second prong of the standard: that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. Defendant Cameron was Plaintiff's supervisor; however, Plaintiff has not adduced evidence that the alleged harassment culminated in a tangible employment action.  The record contains evidence that UCP took reasonable steps to prevent and correct harassing behavior and that the plaintiff unreasonably failed to take advantage of the procedures.  The undisputed evidence shows that UCP had a non-harassment policy and a system under which to handle complaints of harassment; however, even though Plaintiff was aware of these policies, she did not avail herself of them or provide any explanation for why she did not.

Plaintiff has not presented evidence to show a genuine dispute as to the material facts underlying her Title VII hostile work environment claim.  Defendants' motion for summary judgment on that claim is granted.

### 2.  Title VII -- Retaliation

Plaintiff claims that she was subjected to the Transfer, as well as disciplinary actions, in retaliation for her prior complaints of discrimination.  However, Plaintiff's claims for retaliation under Title VII fail as a matter of law.

### i.  Legal Standard

Retaliation claims, like discrimination claims, are analyzed under a three-part burden-shifting framework.  *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  First, a plaintiff must establish a prima facie case, which requires a plaintiff to demonstrate that: "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Kelly*, 716 F.3d at 14.

Regarding the "protected activity" elements, the plaintiff must "have had a good faith, reasonable belief that [s]he was opposing an employment practice made unlawful by Title VII." *Kessler v. Westchester Cnty. Dept. of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006).  However, it is not enough that the plaintiff herself believe that the conduct about which she is complaining violates Title VII, as "mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by *objective* good faith."  *Kelly*, 716 F.3d at 16 (alterations omitted) (internal quotation marks omitted).  "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person."  *Id.* at 17.

An implicit requirement of the second element, the employer's awareness of the protected activity, is that the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."  *Id.* at 15.

Regarding the "materially adverse action" element, in the retaliation context, this means an action that "'well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" *Kessler*, 461 F.3d 199 at 207 (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Additionally, while the test is objective, it is relevant whether the action at issue actually deterred the plaintiff from complaining.  *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011).

Second, once a prima facie case of retaliation is established, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Fincher*, 604 F.3d at 720.

Third, if the employer articulates a legitimate, non-retaliatory reason, then the burden shifts back to the plaintiff to show that "but-for" the protected activity, the adverse action would not have occurred. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533-34 (2013). "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Id.* at 2533.  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

### ii.  Application of Law to Facts

Plaintiff's claims for retaliation are the most sympathetic of her claims because the record, viewed in the light most favorable to Plaintiff, does suggest that Defendants may have been creating a record to justify Plaintiff's eventual placement on administrative leave. However, what is critically missing for purposes of this motion is evidence sufficient to allow a reasonable jury to believe that Plaintiff was disciplined because she had engaged in "protected activity," as it has been interpreted by the courts.  In particular, the evidence does not support a finding that Plaintiff complained about what objectively could be viewed as gender discrimination, rather than personal animosity or unfair treatment unrelated to her gender.

Plaintiff's Title VII sex discrimination claims of disparate treatment and hostile work environment are dismissed on Defendants' motion as discussed above.  For a plaintiff to "prevail

on a claim for retaliation when the underlying conduct complained of was not in fact unlawful," the plaintiff must "establish that she possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Kelly*, 716 F.3d at 16 (alterations omitted) (internal quotation marks omitted). The test for whether the plaintiff possessed a good faith, reasonable belief is objective and is to be evaluated from the perspective of a reasonable person. *See id.* at 17. Moreover, the determination is to be made by considering the "record of the case as a whole." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1179 (2d Cir. 1996).

"A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Kelly*, 716 F.3d at 15. For example, when an employee alleged he was fired after complaining that a white candidate had been selected over qualified minority candidates, the Second Circuit held that the employee failed to make out a prima facie case because his allegations "neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]" and were thus "directed at something that . . . is not properly within the definition of an 'unlawful employment practice.'" *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593-94 (2d Cir. 1988).

Similarly, here, Plaintiff cannot meet this burden. First, Plaintiff cannot establish that she possessed the requisite objectively reasonable, good faith belief that UCP was violating Title VII when she made her Informal Complaint. The Informal Complaint consisted of Plaintiff asking Defendant Cameron at one or more meetings in June 2008 why he spoke to females differently than he spoke to males. As in *Manoharan*, these objections did not identify discrimination against particular individuals nor discriminatory practices by the employer. While it certainly seems that Plaintiff was upset with Defendant Cameron for the way he spoke to her and to other women, nothing in the record about these conversations would allow a reasonable jury to find

that Plaintiff's question to Defendant Cameron was intended as an assertion that UCP was

violating the law or was understood by UCP as such an assertion.  Additionally, there is nothing

in the record that would allow a reasonable jury to find that a reasonable person in Plaintiff's

position at the time of the Informal Complaint would have believed in good faith that Defendant

Cameron's alleged behavior was sufficiently severe to qualify as a hostile work environment.

Moreover, Plaintiff has failed to adduce sufficient evidence of Defendant Cameron

treating men with more respect than women.  Plaintiff has been unable to point to any specific

examples or instances of Defendant Cameron's hostility toward women as compared to men.

When considering the record in this case as a whole, no reasonable jury could find that, at the

time she made her Informal Complaint, Plaintiff reasonably believed in good faith that

Defendant Cameron's behavior was in violation of federal law.

Second, Plaintiff cannot establish that she possessed the requisite objectively reasonable,

good faith belief that UCP was violating Title VII when she made her First Formal Complaint.

The First Formal Complaint does not reference any actions on the part of UCP that could be

understood by a reasonable person in Plaintiff's situation, or by UCP, as discrimination on the

basis of sex or any other protected characteristic.  *See Kelly*, 716 F.3d at 15-17.  In the First

Formal Complaint, Plaintiff complained (1) that she was "switch[ed] from one [location] to

another with no cause" (the Transfer) and (2) that she was "not treated as co-worker 'Marilyn.'"

She did not offer any explanation of why either of these alleged acts constituted sex

discrimination, nor did she even state that the actions were taken because of her sex.

In *Kelly*, the Second Circuit affirmed the district court's finding that the plaintiff lacked a

reasonable, good faith belief that her employer was violating Title VII where she filed a charge

of discrimination with the EEOC and a federal case alleging sex discrimination but there was

"nothing in [the plaintiff's] complaint . . . to indicate that her sex, in one way or another, played a

substantial role in [the employer's] behavior." *Kelly*, 716 F.3d at 15 (internal quotation marks omitted).

The plaintiff in *Kelly* argued that "as a non-lawyer, she should not be required to understand the . . . intricacies of our Title VII jurisprudence," and the court agreed that it "do[es] not require a sophisticated understanding on the part of a plaintiff of this relatively nuanced area of law." *Id.* at 16-17.  Nevertheless, the court found that the plaintiff in *Kelly* "failed to allege facts demonstrating that even a legally unsophisticated employee would have a good faith, reasonable belief that . . . the Defendants' [behavior] constituted discrimination . . . based on gender." *Id.* at 17 (first alteration in original) (internal quotation marks omitted).  The *Kelly* court reasoned that the "success of her claim would require us to endorse not only her belief that the law of Title VII is something other than what it is, but also her apparent belief that the definition of 'discrimination' is something other than what it is." *Id.*

Likewise, here, based on the contents of the First Formal Complaint, no reasonable jury could find that Plaintiff had an objectively reasonable belief that UCP was violating Title VII. "A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Id.* at 15.  Likewise, simply using the word "discrimination" is not sufficient.  *See id.*

While a plaintiff is not required to "append to each allegation . . . the conclusory declaration 'and this was done because of my sex,'" plaintiffs are required to include "allegations of factual circumstances that permit the inference that plaintiff was [discriminated against] because of her sex." *Id.*  "When a plaintiff has alleged facts that, even if taken as true, do not support a prima facie Title VII claim, the plaintiff did not have such a good faith belief." *Ghirardelli v. McAvey Sales & Serv., Inc.*, 287 F. Supp. 2d 379, 385-86 (S.D.N.Y. 2003).

Moreover, the First Formal Complaint was insufficient, for the same reasons outlined above, to allow UCP to have a reasonable understanding that Plaintiff's complaint was directed at conduct prohibited by Title VII.  *See Kelly*, 716 F.3d at 17.  "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."  *Id.*

Whether Plaintiff possessed the required good faith, reasonable belief when making her Second Formal Complaint or when filing her case in federal court is not relevant to this inquiry, as all of the allegedly retaliatory activity outlined in either of Plaintiff's complaints before the EEOC and also in her Amended Complaint in this action occurred between July 2009 and December 2009, before the filing of the Second Formal Complaint on March 12, 2010 and the federal case on January 3, 2011.

Therefore, summary judgment should be granted to Defendants on Plaintiff's retaliation claims as she has not adduced sufficient evidence for a reasonable jury to find that she possessed an objectively reasonable, good faith belief that the original discriminatory conduct of which she complained violated Title VII or that UCP could have reasonably understood her complaints to concern conduct in violation of Title VII.

However, even assuming that Plaintiff could establish that she possessed a good faith, reasonable belief that the challenged actions violated Title VII and that UCP could have reasonably been aware of the same, Plaintiff's claims for retaliation still would fail.

### 1)  The Transfer

The only potential protected activity that preceded the Transfer was the Informal Complaint.  While, as outlined above, no reasonable jury could find that Plaintiff has satisfied the first two prongs of a prima facie case -- *i.e.*, that Plaintiff engaged in protected activity and

UCP was aware of that activity -- Plaintiff's claim for retaliation based on the Transfer also fails because no reasonable jury could find that she has satisfied the fourth prong, that there was a causal connection between the Informal Complaint and the Transfer.

The Transfer occurred in July 2009, while the conversations constituting the Informal Complaint took place in June of 2008, over a year earlier.  While the Second Circuit "has never established a temporal bright line beyond which an adverse employment action cannot qualify as retaliatory," it has held that "one-year . . . falls well beyond that contemplated by this Court." *Miller v. Kempthorne*, 357 Fed. Appx. 384, 386-87 (2d Cir. 2009) (citation omitted). Accordingly, courts in this Circuit have consistently found that time periods of a year, as well as time periods as short as four months, between the protected activity and the alleged retaliatory act are too great for a reasonable jury to find a causal connection.  *See McCormick v. Donovan*, 365 Fed. Appx. 247, 249 (2d Cir. 2010); *Contes v. Porr*, 345 F. Supp. 2d 372, 383 (S.D.N.Y. 2004) (listing cases).

UCP has provided evidence supporting a legitimate, non-retaliatory reason for the Transfer – that a consumer requested that Plaintiff be removed as his caretaker.  Therefore, in order to survive summary judgment, Plaintiff would need to provide sufficient evidence from which a reasonable jury could find that the Informal Complaint was the "but-for" cause of the Transfer.  Plaintiff's evidence falls far short of this threshold.

### 2)   The Disciplinary Actions

As an initial matter, only some of the disciplinary actions mentioned in the parties' summary judgment submissions were brought before the EEOC.  Specifically, in the Second Formal Complaint, Plaintiff mentioned the disciplinary incidents from August and December 2009.  As discussed above, alleging Title VII claims in an EEOC charge is a "precondition to bringing such claims in federal court," unless the claims are "reasonably related" to claims that

were alleged before the EEOC.  *Legnani*, 274 F.3d at 686 (internal quotation marks omitted).

Claims are considered "reasonably related" to claims that were alleged before the EEOC if they

"would fall within the reasonably expected scope of an EEOC investigation of the charges of

discrimination."  *Amin*, 282 Fed. Appx. at 961 (citing *Alfano*, 294 F.3d at 381).  However, even

assuming that the other disciplinary incidents are reasonably related to those two, no reasonable

jury could find from the evidence in the record that Plaintiff has satisfied the fourth prong of a

prima facie case of retaliation – causal connection as to any of the disciplinary incidents.

Moreover, even assuming that Plaintiff could demonstrate a prima facie case of

retaliation, her claims would still fail.  UCP has articulated legitimate, non-retaliatory reasons for

each of the disciplinary actions.  Under the burden-shifting framework, "after the defendant has

articulated a non-retaliatory reason for the employment action, the presumption of retaliation

arising from the establishment of the prima facie case drops from the picture."  *Zann Kwan v.*

*Andalex Group LLC*, 737 F.3d 834, 845 (2d Cir. 2013).

Then, in order to survive summary judgment, Plaintiff would need to provide enough

evidence for a reasonable jury to find that the Informal Complaint or the First Formal Complaint

was the "but-for" cause of these disciplinary actions.  *Univ. of Tex. Sw. Med. Ctr.*, 133 S.Ct. at

2533-34.  This "burden requires [the plaintiff] to show more than the possibility of retaliatory

animus."  *Puglisi v. Town of Hempstead, Dep't of Sanitation*, No. 12–3815–cv, 2013 WL

5663223, at *1 (2d. Cir. Oct. 18, 2013) (citing *Univ. of Tex. Sw. Med. Ctr.*, 133 S.Ct. at 2528).

No reasonable jury could find that Plaintiff's evidence meets this substantial burden.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims for retaliation

under Title VII is granted.

### B.  NYSHRL and NYCHRL Claims

The Court has granted summary judgment to Defendants on all of Plaintiff's Title VII claims, which were Plaintiff's only claims arising under federal law.  All of Plaintiff's remaining claims arise under state and city law.  The Court declines to exercise supplemental jurisdiction over these state and city law claims.  *See* Federal Rule of Civil Procedure § 1367(c)(3).  Accordingly, these claims are dismissed without prejudice.

The issue on which Plaintiff moves for partial summary judgment relates only to Plaintiff's state and city law claims.  Plaintiff moves for partial summary judgment on the issue that UCP discriminated against her on the basis of her sex, in violation of NYSHRL and NYCHRL, through UCP's policy and/or practice of assigning Plaintiff and other female RP Specialists to provide intimate care for consumers of the opposite sex, while not assigning male RP Specialists to provide intimate care for consumers of the opposite sex.  That motion is hereby denied on jurisdictional grounds and may be subject to renewal in another court.

## IV.    Conclusion

For the reasons discussed above, Plaintiff's motion for partial summary judgment is DENIED, and Defendants' motion for summary judgment dismissing Plaintiff's complaint in its entirety is GRANTED.  Plaintiff's Title VII claims are dismissed with prejudice, and Plaintiff's NYSHRL and NYCHRL claims are dismissed without prejudice.

The Clerk of Court is directed to close the motions at docket numbers 41 and 47 and to close this case.

Dated: March 7, 2016
   New York, New York

Lorna G. Schofield

**UNITED STATES DISTRICT JUDGE**
